UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRADLEY MARSH, | ) Case No.: 4:16-cv-1621 |
| | ) |
| Plaintiff, | ) JUDGE PATRICIA A. GAUGHAN |
| | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) REPORT AND RECOMMENDATION |
| Acting Comm'r of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff Bradley Marsh (hereinafter, "Marsh" or "claimant") challenges the final decision

of Defendant Commissioner of Social Security (hereinafter, "Commissioner"), denying his

applications for Disability Insurance Benefits ("DIB"), a Period of Disability, and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i),

423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case

is before the undersigned United States Magistrate Judge pursuant to an automatic referral under

Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the

Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

# I. PROCEDURAL HISTORY

On May 9, 2013, Marsh applied for DIB and SSI benefits.[1]  (R. 9, PageID #: 301, 372.)

Marsh stated that he became unable to work because of his disabling condition on June 17, 2012.

(*Id.* at PageID #: 377, 301, 372.)  Marsh listed his physical or mental conditions that limit his

ability to work as: "Headaches, post concussion syndrome, head injury; headaches; short

attention span; closed head injury; post concussion syndrome; frontal lobe damage; short term

memory loss; concentration problems; comprehension problems."  (*Id.* at PageID #: 376.)

Marsh's applications were denied initially and upon reconsideration.  (*Id.*, PageID #: 196-

197, 230-231.)  Marsh filed a written request for a hearing before an administrative law judge.

(*Id.* at PageID #: 271-272.)  An Administrative Law Judge ("ALJ") convened a hearing on

February 24, 2015, to hear Marsh's case.  (*Id.* at PageID #: 89-120.)  Marsh was represented by

counsel at the hearing and testified.  (*Id.* at PageID #: 89.)  A vocational expert ("VE") attended

the hearing and provided testimony.  (*Id.* at PageID #: 89, 115-119.)

On March 6, 2015, the ALJ issued her decision, applying the standard five-step

sequential analysis to determine whether Marsh was disabled.  (*Id.* at PageID #: 66-80; *see*

*generally* 20 C.F.R. §§ 404.1520(a), 416.920(a).)  Based on her review, the ALJ concluded

Marsh was not disabled.  (*Id.* at PageID #: 67, 80.)  The Appeals Council denied Marsh's request

for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (*Id.* at

PageID #: 62, 49-51.)

---

[1]  Marsh had filed a previous claim in September 2007, which resulted in a December 2009
decision finding Marsh disabled for a closed period, from June 30, 2007, through August 26,
2008.  The decision found that claimant had returned to substantial gainful activity on August 27,
2008.  (R. 9, PageID #: 125-129.)

Marsh seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Marsh raises three areas for review:

(1.) Did the ALJ articulate valid reasons for rejecting the opinions of Dr. Goswami?

(2.) Did the ALJ lack substantial evidence for rejecting the opinions of Dr. Toth? Is the ALJ's decision inconsistent because she gave the Agency Reviewing doctors considerable weight but failed to account for Marsh's variable pace with routine tasks?

(3.) Did the ALJ lack substantial evidence and/or fail to articulate valid reasons for discrediting the Plaintiff?

(R. 10, PageID #: 561.)

## II. PERSONAL BACKGROUND INFORMATION

Marsh was born on June 27, 1988, and was considered a younger person, 18 to 40 years old, on his alleged disability date. (R. 9, PageID #: 91, 160); *see* 20 C.F.R. § 404.1563(c). Marsh completed twelfth grade, and is able to communicate in English. (R. 9, PageID #: 377, 375.) He has past relevant work as a stock selector. (*Id.* at PageID #: 116, 78.)

## III. RELEVANT MEDICAL EVIDENCE[2]

The following is a brief summary of the pertinent medical history at issue in this case. As noted earlier, Marsh applied for Disability Insurance and SSI benefits on May 9, 2013. (R. 9, PageID #: 301, 372.) Marsh listed his physical or mental conditions that limit his ability to work

---

[2] The recitation of the evidence is not intended to be exhaustive. I t includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the Court to the assignments of error raised.

as: "Headaches, post concussion syndrome, head injury; headaches; short attention span; closed head injury; post concussion syndrome; frontal lobe damage; short term memory loss; concentration problems; comprehension problems." (*Id.* at PageID #: 376.)

The ALJ determined that Marsh has the following severe impairments: history of seizures, post-concussion syndrome, status-post traumatic brain injury, depression, anxiety, bipolar disorder, adjustment disorder with depressed mood, cognitive disorder- not otherwise specified, and drug and alcohol abuse. (*Id.* at PageID #: 69.) Marsh is not disputing the ALJ's findings regarding his physical health and exertional restrictions (R. 10, PageID #: 562). Evidence concerning those undisputed areas will not be detailed here.

Marsh refers the court to the following relevant evidence. (*Id.* at PageID #: 562-567.) On June 30, 2007, Marsh was involved in a motor vehicle accident, which resulted in "shearing injury and brain contusions with a small subdural hematoma." (R. 9, PageID #: 447; *see also* PageID #: 72, 477.) On March 1, 2012, Marsh presented for a consultative independent medical exam with Gregory A. Moten, D.O. (*Id.* at PageID #: 477-480.) Marsh stated that he was in the hospital for two months as a result of the accident, but he has done well physically, with motor skills returning to near normal. He reported that his primary problems were post-concussion syndrome and seizure disorder. He also reported that he cannot remember simple tasks, and he has ongoing headaches. (*Id.* at PageID #: 477.) Dr. Moten observed he had poor insight and cognitive function. (*Id.* at PageID #: 448.)

Marsh had a consultative psychological examination on March 5, 2012, with James M. Lyall, Ph.D., a neuropsychologist. (*Id.* at PageID #: 483-487.) Marsh reported that he successfully took the driving test after the accident to regain his driver's license, and drove

4

himself to the appointment. He was working part-time as a stock room person. His chief complaint was that he continued to have difficulty with short-term memory, and mood problems resulting in irritability. These problems were somewhat hampering his ability to work. (*Id.* at PageID #: 483-484.) Memory function testing revealed that claimant had special difficulty with auditory attention skills, and his delayed memory function also fell within the borderline range. Dr. Lyall noted that individuals make the bulk of their improvement after a head injury within a year or two, and because Marsh's injury was five years earlier, his cognitive issues will probably not improve much. (*Id.* at PageID #: 486.)

On June 4, 2013, neurologist Mohamed Al Jaberi, M.D. examined Marsh. (*Id.* at PageID #: 512-514.) Marsh reported that he took seizure medicine for a year following the accident. He reported that in the previous six months to two years, he was experiencing insomnia, depression, anger, and lethargy. Marsh had an EEG, CAT scan, and a neuropsychological assessment before his appointment with Dr. Jaberi, but only the CAT scan results were available (which were interpreted as normal). (R. 9, PageID #: 512.) Dr. Jaberi stated he would obtain EEG to review in light of Marsh's forgetfulness and his history of seizures. The doctor also wanted to review the results of his neuropsychological assessment, to determine if there was a need for a psychiatrist. A follow-up appointment was scheduled. (R. 9, PageID #: 514.)

The results of the neuropsychological assessment, conducted by Delphi M. Toth, Ph.D., in April-May 2013, were issued on June 7, 2013. (*Id.* at PageID #: 515-516.) Marsh reported that he had lost all drive, ambition, and motivation since the car accident, that his attention span was shorter, and his memory is poor. Dr. Toth commented that the claimant's attention span, during testing, was "severely impaired and he was highly distractible." (*Id.* at PageID #: 515.)

Dr. Toth found moderate impairment of immediate and short-term memory, and spotty, moderate impairment of remote memory. He has significant residual difficulty with attention, concentration, distractibility, memory, visual-perceptual function, and frontal lobe function. Dr. Toth opined that Marsh has significant permanent residual cognitive dysfunction and emotional dyscontrol. (R. 9, PageID #: 516.)

During a September 4, 2013, appointment with Dr. Jaberi, Marsh reported that he was continuing to have memory issues and daily headaches "more consistent with tension headache fluctuating in severity," which were no longer affecting his activities. The results of the January 2013 EEG revealed no abnormalities. (*Id.* at PageID #: 533.) At a June 17, 2014, visit, Marsh identified no changes in his forgetfulness, but he requested a different medication for his almost-daily headaches. On October 10, 2014, Dr. Jaberi noted that the June 2013 neuropsychological assessment was in hand, and revealed that Marsh had significant cognitive decline since his accident. (*Id.* at PageID #: 552-553.)

On August 14, 2013, Marsh's treating physician, Atul Goswami, M.D., completed an assessment estimating that Marsh would be off task 25% or more of a typical workday, and was likely to be absent about four days per month as a result of his impairments. (*Id.* at PageID #: 526.) Dr. Goswami stated that Marsh's headaches were mild, resulting from post-concussion syndrome, and gave him vertigo and exhaustion. The headaches average three per week, lasting approximately 10 minutes, triggered by stress or lack of sleep. (*Id.* at PageID #: 527-528.) In addition, the doctor also indicated that Marsh would need to take three unscheduled breaks per day, lasting an average of thirty minutes. (*Id.* at PageID #: 528.) A January 9, 2015, assessment by Dr. Goswami was similar: Marsh would be off task 20% or more of a typical workday, and

was likely to be absent about four days per month due to pain or fatigue.  Marsh would need to take two unscheduled breaks per day.  (R. 9, PageID #: 556.)  Dr. Toth provided a mental assessment on January 5, 2015, indicating that Marsh would not be able to reliably perform detailed tasks, maintain attention and concentration for extended periods, and perform activities within a schedule.  Also, Marsh would have noticeable problems over 20% of the time getting along with coworkers, interacting with the general public, completing simple tasks and making simple decisions.  (*Id.* at PageID #: 557-558.)  Dr. Toth opined that Marsh would likely be absent from work more than four days per month.  (*Id.* at PageID #: 558.)

A state agency reviewing psychologist, Tonnie Hoyle, Psy.D., determined that Marsh's depression and cognitive issues limited his ability to understand and remember detailed tasks, although he was able to understand and remember simple tasks.  He could learn 3 or 4 step tasks when someone is present to explain the tasks and give direction if needed.  (R. 9, PageID #: 190.)  Hoyle determined Marsh, is at most, moderately limited in concentration and persistence, he could perform work that did not require close concentration or rigid production goals, and he could carry out routine tasks to completion with variable pace.  (*Id*. at PageID #: 191.)  According to Hoyle, Marsh was moderately limited in his ability to respond appropriately to changes in the work setting.  (*Id.*)  On reconsideration, reviewing psychologist Carl Tishler, Ph.D., concurred with these findings.  (*Id.* at PageID #: 225-226.)

## IV.  TESTIMONY OF VOCATIONAL EXPERT

A vocational expert attended the administrative hearing and provided testimony (R. 9, PageID #: 115-119.)  The VE determined that Marsh had past relevant work as a stock selector,

DOT number 922.687-058. It is unskilled, medium level, SVP one and two, and reasoning levels one and two. (*Id.* at PageID #: 116.)

The ALJ posed a hypothetical question to the VE concerning an individual of Marsh's age, education, and past relevant work, with the following limitations:

> This individual has no exertional limitations. They should never climb ladders, ropes, or scaffolds. They should avoid all exposure to workplace hazards, such as unprotected heights or hazardous machinery. This individual should avoid concentrated exposure to noise. They are precluded from occupational driving. Additionally, this individual has mental impairments, but can understand, remember, and carry out simple, routine tasks that could be learned in 30 days or less; reasoning levels one through two. I'd like the environment relatively static, and involve changes that can be easily explained. I'd like this to be low stress work, which I'm going to define, as precluding tasks that involve high production quotas, such as piecework or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing work of others, or being responsible for the safety of others.

(R. 9, PageID #: 116-117.) The vocational expert was asked, given this residual functional capacity, could such a hypothetical individual return to their past relevant work. (R. 9, PageID #: 116-117.) The VE responded that the stock selector job would still fit the hypothetical individual described. In response to the ALJ's query whether there were other unskilled jobs that such a person could perform, the VE provided several examples: A laundry worker is a medium, unskilled job, DOT number 361.687-018, SVP one and two, and reasoning level one. In northeast Ohio, there are 1,200 jobs, and nationally, 180,000 jobs. Another suitable occupation is a wire worker, a light unskilled job, DOT number 728.684-022, SVP one and two, and reasoning level one and two. In northeast Ohio, there are 750 jobs, and nationally, 105,000 jobs. (R. 9, PageID #: 117.) The third example given was an electronics worker, a light, unskilled job,

DOT number 726.687-101, SVP one and two, and reasoning level one and two. In northeast Ohio, there are 450 jobs, and nationally, 60,000 jobs. (R. 9, PageID #: 117-118.)

The ALJ then modified the hypothetical to an individual who would be on task no more than 80% of the workday, as a result of his symptoms. (R. 9, PageID #: 118.) The VE responded that there would be no jobs for such an individual. The VE's response was the same (no jobs) in response to an additional limitation that such a person would miss two or more days of work per month, or to an individual that would work at a pace that was 20% slower than the average individual.

## V. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her March 6, 2015, decision:

1. The claimant meets the insured status requirements of the Social Security Act (the "Act") through September 30, 2016. This finding was not reached in the previous decision.

2. The claimant has not engaged in substantial gainful activity since June 17, 2012, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*). This finding departs from that of the previous decision, but only insofar as it reflects the alleged onset date for the present claim.

3. The claimant has the following severe impairments: history of seizures, post-concussion syndrome, status-post traumatic brain injury, depression, anxiety, bipolar disorder, adjustment disorder with depressed mood, cognitive disorder-not otherwise specified, and drug and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)). This finding departs from that of the previous decision, in order to accurately reflect the impairments identified and the diagnoses rendered within the present claim.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,

404.1526, 416.920(d), 416.925, and 416.926). This finding departs from that of the previous decision, a reflection of the evidence included in the current records.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: that the claimant may never climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to noise and all exposure to workplace hazards, including unprotected heights, dangerous moving machinery and occupational driving; the claimant is limited to the performance of simple, routine tasks that can be learned in thirty days or less and are catalogued by the Dictionary of Occupational Titles as reasoning levels one or two, undertaken in a work setting that is relatively static, in which workplace changes can be easily explained, which setting is low stress, defined as precluding tasks that involve high production quotas [such as "piece-rate" work or assembly line work], strict time requirements, arbitration, negotiation, confrontation, directing the work of, or being responsible for the safety of, others. Because the previous claim allowed a closed period of disability, based on listing 12.02, no residual functional capacity was assessed in the previous decision.

6. The claimant is capable of performing past relevant work as a stock selector (DOT#922.687-058), having a medium exertional level designation and a specific vocational preparation factor of two. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). Because the previous decision allowed a closed period of disability, based upon listing 12.02, this finding was not reached in the previous decision.

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 17, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). This finding adheres to that portion of the previous decision, dating from and after August 27, 2008.

(R. 9, PageID #: 68-69, 71, 78, 79-80.)


## VI. DISABILITY STANDARD

A claimant is entitled to receive benefits under the Social Security Act only when she/he establishes disability within the meaning of the Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any

medically determinable physical or mental impairment that can be expected to result in death or

that has lasted or can be expected to last for a continuous period of not less than twelve (12)

months." 20 C.F.R. §§ 404.1505(a), 416.905(a)

Social Security Administration regulations require an ALJ to follow a five-step sequential

analysis in making a determination as to disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a);

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit

has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful
> activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the
> claimant must show that he suffers from a severe medically determinable physical
> or mental impairment. *Id*. § 404.1520(a)(4)(ii). Third, if the claimant shows that
> his impairment meets or medically equals one of the impairments listed in 20
> C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id*. § 404.1520(a)(4)(iii).
> Fourth, the ALJ determines whether, based on the claimant's residual functional
> capacity, the claimant can perform his past relevant work, in which case the
> claimant is not disabled. *Id*. § 404.1520(a)(4)(iv). Fifth, the ALJ determines
> whether, based on the claimant's residual functional capacity, as well as his age,
> education, and work experience, the claimant can make an adjustment to other
> work, in which case the claimant is not disabled. *Id*. § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden
> shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d
> 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R.

§ 416.920(a)(4).

# VII. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of

whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are

supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th

Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* Substantial evidence has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

VIII.  ANALYSIS

Marsh briefs three issues for review that focus on the treating physician rule, the evidence supporting the ALJ's decision to reject the opinions of Dr. Toth, and the evidence and bases for the ALJ's decision not to fully credit Marsh's statements. The court will address each issue in turn.

## A. Treating Physician Rule

The claimant contends that the ALJ violated the treating physician rule and SSR 96-2p because the ALJ did not properly consider the assessments by the treating primary care physician, Dr. Goswami.  (R. 10, PageID #: 574-577.)   Specifically, Marsh argues that Dr. Goswami opined that Marsh's head injury causes headaches of 10 to 20 minutes, three times per week.  (*Id.* at PageID #: 574, citing R. 9, PageID #: 527.)  Marsh further asserts the doctor found that Marsh would be off task more than 25% of the time, and would be absent four days per month.  (*Id.* at PageID #: 574, citing R. 9, PageID #: 528-529.)  According to Marsh, the ALJ failed to address this assessment.  He asserts that the ALJ only references two assessments, when the doctor "really performed three assessments (two in August 2013 and one in January 2015)." (R. 10, PageID #: 574, citing R. 9, PageID #: 76.)  Marsh argues that the case should be remanded, because the ALJ overlooked the second assessment.  The court will address this argument *infra.*

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.  *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the treating physician rule, is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are sometimes equipped to provide a more complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The treating physician rule requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011). Social Security regulations, however, require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Marsh contends that two separate assessments were conducted in August 2013, and argues that the ALJ "missed" the second assessment. (R. 10, PageID #: 574, citing R. 9, PageID #: 76.) It is correct that the ALJ stated: "The claimant's primary care physician, Atul Goswami, M.D., offered two opinions, one dated August 14, 2013 and one dated January 9, 2015." (R. 9,

14

PageID #: 76.)  But the court cannot agree with Marsh's assertion, after conducting a review of the ALJ's statement and the evidence of record.

The record indicates that Dr. Goswami filled out two forms on August 14, 2013, and they were submitted as one five-page exhibit, Exhibit B9F.  (R. 9, PageID #: 525-529.)  The first form is a physical capability assessment (*Id.* at PageID #: 525-526), and the accompanying form is entitled "Headaches Medical Source Statement" (*Id.* at PageID #: 527-529).  The ALJ explicitly admitted the entire Exhibit B9F as part of the record at the hearing.  (*Id.* at PageID #: 90 (admitting exhibits "B-1F through B-17F").)  There is no basis for the court to conclude that the ALJ considered certain pages of this exhibit, but ignored other pages.  Rather, a reasonable reading of the ALJ's decision and the record indicate that the ALJ considered construed Exhibit B9F, which Marsh alleges contained two separate opinions, as one collective opinion.

Marsh also contends that remand is warranted because the ALJ improperly evaluated the January 2015 assessment.  The ALJ addressed Dr. Goswami's opinions, in relevant part:

> The claimant's primary care physician, Atul Goswami, M.D., offered two opinions, one dated August 14, 2013 and one dated January 9, 2015.  The opinions are similar and therefore the limitations of August 14, 2013 will be recited.  On that date, Dr. Goswami indicated that the claimant could perform less than sedentary work, could stand and or walk ten-to-twenty minutes, could sit for four hours, could not climb, balance, stoop, kneel, reach, handle, would have multiple environmental limitations, be off task twenty-five percent of the time and miss more than four days per month. * * * * * * The opinion of January 9, 2015 was based on the claimant's seizure disorder, head injury and history of cerebral hemorrhage.  However, this opinion gives no apparent consideration to the claimant's being released from treatment for these injuries in 2007 (BlF/3), with no sequelae other than mild cognitive impairment and short-term memory loss, identified in 2008 (B3F/l 0).  Dr. Goswami has treated the claimant over a lengthy period and was reporting within the bounds of his professional certifications. However, the bases offered for the limitations proposed [simply] are not reflected as existing in the record, for the period relevant to this claim.  No weight was accorded these opinions.

(R. 9, PageID #: 76.)

Treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance*, 2008 WL 162942, at *3. As the Commissioner points out, Dr. Goswami's medical findings were based on "head injury, seizure disorder, [and] intracerebral hemorrhage," the latter two of which were no longer active conditions. The hemorrhage was not an ongoing condition, after his release from hospitalization following the 2007 accident (R.9, PageID #: 73), and Marsh himself testified at the hearing that he was no longer having seizures, nor was he taking seizure medication. (R. 12, PageID #: 600; *see generally* R. 9, PageID #: 107-108.) The ALJ found that the record was silent as to any seizures after October 2009. (R. 9, PageID #: 69, 72; *see also* PageID #: 540 ("negative for seizures," Dr. Jaberi).) The ALJ further determined that Dr. Goswami's conclusions were not supported by his clinical findings or the treatment records indicating stable condition. Dr. Goswami's progress notes indicated no restrictions from any activity. *See, e.g.*, R. 9, PageID #: 548, 554.

Although the claimant points out that there is evidence in the record showing that Marsh has attention span problems and is likely to have some difficulty remembering job instructions (R. 10, PageID #: 576), the ALJ recognized these issues ((R. 9, PageID #: 70). In doing so, the RFC provides that Marsh is limited to simple routine tasks in a low stress job setting. (R. 9, PageID #: 71.) Dr. Goswami's assessment does not address these factors.[3]

---

[3] The court also notes some seeming inconsistencies in Dr. Goswami's assessment. The doctor states that Marsh's headaches were mild, and average three per week, lasting approximately ten minutes (each). (R. 9, PageID #: 527-528.) Yet the doctor also indicated that Marsh would need to take three unscheduled breaks per day, lasting an average of thirty minutes. (R. 9, PageID #: 528.) The rationale behind this discrepancy is not apparent.

In any event, the court finds that the ALJ gave good reasons for discounting Dr. Goswami's restrictions. The good reasons are supported by evidence in the case record, and those reasons are sufficiently clear to demonstrate why the ALJ assigned that weight. The court finds that the decision of the Commissioner in this respect is supported by substantial evidence.

## B. Neuropsychological Assessment

The claimant argues the ALJ lacked substantial evidence for rejecting the neuropsychological assessment of Dr. Toth. (R. 10, PageID #: 577-581.) An ALJ is required to evaluate all medical opinions, regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight. *Walton v. Commissioner*, 187 F.3d 639; 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must then determine how much weight to give to each opinion. *Id.* "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p.

As mentioned earlier, the treating source rule is based on the idea that providers who have a long-standing treatment relationship with a person may be better suited to provide a complete picture of the person's health and treatment history. The rationale of the treating source rule does not apply, then, to the opinion of a clinical psychologist who only examined a claimant on one occasion. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Kornecky v. Commissioner*, No. 04-2171, 2006 WL 305648, at *9 (6th Cir. Feb. 9, 2006) (per curiam) (single visit does not constitute ongoing treatment relationship). Such an opinion is entitled to no special degree of deference. *Barker*, 40 F.3d at 794 (citing *Atterberry v. Secretary,*

*HHS*, 871 F.2d 567, 572 (6th Cir. 1989).)  In fact, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky*, 2006 WL 305648, at *9.

The ALJ stated that two opinions were received from Dr. Toth, a consulting neuropsychologist. Each opinion was based on the same examination, on June 7, 2013. *See generally* R.9, PageID #: 490-493, 557-560. The ALJ rejected the June 7, 2013, opinion to the extent Dr. Toth opined that Marsh would be unable to maintain employment, because that opinion addressed the ultimate issue reserved to the Commissioner.  (R.9, PageID #: 77, 493.) Dr. Toth's January 2015 opinion suggested multiple marked and extreme limitations across the four psychological work-related abilities, but it was based on the eighteen month old (June 2013) examination that indicated severe impairment of attention span, high distractibility, moderate memory impairment, and evidence of frontal lobe damage.  The ALJ accorded little weight to either of Dr. Toth's opinions.  (R.9, PageID #: 77.)

Marsh argues that Dr. Toth's functional restrictions should be credited as they are permanent restrictions; and he asserts that it is unclear why the ALJ assigned little weight to Dr. Toth's opinions.  (R. 10, PageID #: 578-579.)  The ALJ, however, asserted that Dr. Toth's January 2015 opinion suggested more rigid memory-based restrictions than were indicated in the exam.  In addition, the ALJ pointed out that more recent reports from Dr. Jaberi showed less severe deficits in attention and memory.  (R.9, PageID #: 77, citing PageID #: 513, 552.)  At the June 4, 2013 visit, the neurologist Dr. Jaberi concluded that Marsh had a "normal attention span" and "normal recent and old memory."  (R. 9, PageID #: 513.)  On October 10, 2014, Dr. Jaberi said Marsh had "normal attention" and normal memory.  (R. 9, PageID #: 552.)

In considering Dr. Toth's opinions, the ALJ noted the nature of the examining relationship, Dr. Toth's specialization, the support given for the psychologist's opinions, and the consistency of the opinions. *See generally* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ explained why Dr. Toth's opinions were not adopted, and pointed to evidentiary support in the case record why the ALJ assigned her opinions little weight. (R.9, PageID #: 77.)

Marsh also claims that, although the ALJ gave considerable weight to the opinions of two agency consulting psychologists, it is not clear how their restrictions factored into the RFC, particularly with regard to pace. (R. 10, PageID #: 581.) The ALJ recounted that Dr. Lyall found "mild" limitations as to pace, but claimant's pace would wane as the complexity of the task increased. (R. 9, PageID #: 76-77.) As to Dr. Harvan, the ALJ recited his finding that Marsh would have "slight" difficulty maintaining pace, which would increase as the complexity of the task increased. (R. 9, PageID #: 77.) The term pace simply relates to the speed at which work is accomplished; a variable pace does not per se indicate that the worker is off-task. The RFC reasonably accounted for the mild or slight pace limitations by limiting Marsh to "simple, routine tasks" in a low stress setting, and precluding work that involved high production quotas or strict time requirements. (R. 9, PageID #: 71.)

Although Marsh points to evidence that could support Dr. Toth's conclusions (R. 10, PageID #: 580-581), the Commissioner's determination must stand if it is supported by substantial evidence, regardless of whether substantial evidence could support the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. The court finds that the decision of the Commissioner on this issue is supported by substantial evidence.

<u>C.  Credibility Determination</u>

The ALJ determined that Marsh's statements concerning the intensity, persistence and limiting effects of his medically determinable impairments were not entirely credible.  (R. 9, PageID #: 71.)  Marsh, however, contends that the ALJ failed to state valid reasons for discrediting his statements.  (R. 10, PageID #: 581-585.)

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference.  *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).  The ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record."  *Rogers v. Commissioner*, 486 F.3d 234, 247-248 (6th Cir. 2007).  The ALJ is not required to accept the claimant's subjective complaints, and may properly consider the claimant's credibility.  *Jones*, 336 F.3d at 476 (citing *Walters*, 127 F.3d at 531).

From the evidence in the record, the ALJ compiled a lengthy list of daily activities that Marsh participates in.  (R. 9, PageID #: 74-75.)  The ALJ then determined that:

> . . . claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  While none of these activities, considered in isolation, would warrant or direct a finding of "not disabled"; when considered in combination, they strongly suggest that the claimant would be capable of engaging in the work activity contemplated by the residual functional capacity.

(*Id.* at PageID #: 75.)

The ALJ also stated that Marsh "has made inconsistent statements on issues central to the disposition of these claims."  (*Id.* at PageID #: 75.)  The ALJ cited several examples, including Marsh's report to a consultative examiner in March 2012 that he still had ongoing headaches, while the treatment records from that period consistently indicate that he denied headaches.  (*Id.*,

citing PageID #: 477, 467, 468, 470.) In June 2013 he told the neurologist that he does not drive (*Id.* at PageID #: 513), yet he reported to a consultative examiner in August 2013 that he drove himself to the appointment (*Id.* at PageID #: 497). Other examples were given as well. The ALJ asserted that the inconsistencies suggest that the information provided by the claimant may not be entirely reliable. (*Id.* at PageID #: 75.)

The ALJ's decision identified specific facts supported by the record that cast doubt on the severity of the disabilities that Marsh described. (R. 9, PageID #: 75.). The decision contains specific reasons for the finding on credibility that are sufficiently specific to make clear the weight the ALJ gave to the claimant's statements and the reasons for that weight. *See, e.g.*, *Wilson v. Commissioner*, No. 14-5968, 2015 WL 4385281, at *4 (6th Cir. July 16, 2015) (per curiam) (quoting SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). The court finds that the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence. Because "a reasonable mind might accept [the evidence] as adequate to support" his credibility determination, the court concludes that substantial evidence supports the ALJ's finding. *Norris v. Commissioner*, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing *Rogers*, 486 F.3d at 241).

## XI.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the

Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends

that the decision of the Commissioner be **AFFIRMED**.


Date: <u>May 8, 2017</u>                              <u>s/ David A. Ruiz</u>
                                                     David A. Ruiz
                                                     United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within
the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.
*See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th
Cir. 1981).